Good morning, Your Honor. Renee Maness of the Federal Public Defender's Office here on behalf of the appellant, Mr. Miller. I would like to reserve three minutes for rebuttal. Thank you. I will focus my argument primarily on the acceptance of responsibility issue. If you have any questions regarding the loss calculation, I'm certainly willing to address them. I would like to point out that this is not a situation, this is not a case, where Mr. Miller was ever offered the opportunity to plead guilty, accept the loss valuation that was ultimately determined of $3.7 million, waive appeal, and qualify for the third point for acceptance of responsibility. That offer was simply never made to Mr. Miller. The demand from the government was in the beginning and remained of record up through the sentencing that in order simply to qualify for the third point for acceptance of responsibility, Mr. Miller needed to polygraph, he needed to sit down and have a conversation with the government about all of his activity, which I refer to generically as a proffer or debrief session, and he needed to undertake a variety of additional waivers regarding forfeiture of assets, many of which, to be perfectly honest, I did not even fully understand. The record is absolutely clear, and at the sentencing hearing was specifically stated to the district court that in my analysis, our plea proceedings broke down when I explained I could not allow my client to polygraph and I would not subject him to a debrief or proffer session unless, similar to safety valve, similar to all of the 5K1.2 analysis, he was given some respect at the time of sentencing, some consideration for being willing to do so, because that's an extraordinary level of cooperation with the government which is not seen in the ordinary plea situation. Well, suppose that we agree with you that it was inappropriate to require he take the polygraph. Would that really make a difference in this case? I believe it would, Your Honor. I believe that had Mr. Miller been offered an opportunity to engage in appropriate plea negotiations, they could have gone forward. The question for acceptance of responsibility specifically set forth in the Guidelines is, did the defendant admit guilt sufficiently early so that the government did not have to prepare for trial? I understand there is, of course, the United States v. Johnson case which is currently pending a request for en banc, saying the mere failure to waive appeal and step beyond preparing for trial might be a basis for the government to refuse to move for acceptance. But this goes beyond that. This goes not just waive appeal. This goes polygraph. Talk with us. Do all of that before sentencing to the point where we are comfortable that everything you've told us to do. And this consideration has never been regarded as a reason to review the plea negotiations. I mean, you're making a somewhat different argument than has been made before, and it seems somewhat open-ended in the sense that in any – I understand that you have particular problems with the proffers that were made in the plea negotiations, but there could be a – many defendants who don't plead guilty because of something about the plea offer that was made that they find unacceptable. Are we going to get into reviewing that in every instance? It is difficult when the plea negotiations become part of the issue. That was made of record by the government as one of their reasons for denial or for refusal to move for the third point. That became an issue because the government made it an issue and the government made that a specific reason. Are you accepting the basic structure of Johnson that says, contrary, for example, to the dissent in Johnson, that the issue isn't whether the – is whether the government had any legitimate reason as opposed to whether it had a reason that attaches to the need to go to trial? Whether – we certainly have issues with the premise of Johnson, but I think even under Johnson, and going back to Medina Beltran, the question is, is the government operating in good faith? Do they have a non-arbitrary and constitutional reason? And when we look at the reasons proffered by the government here, they are false, they misrepresent the record, they are therefore arbitrary, and there's a specific demand for a level of waiver of constitutional rights that persist beyond admission of guilt as this Court recognized in Watts. That is an unconstitutional demand. How do you distinguish Medina Beltran? Medina Beltran talked about the Court has the right to review the government's reasons for arbitrariness and constitutionality. The reasons proffered here by the government demonstrated that they were arbitrary. The first reason was that Mr. Miller wouldn't accept the plea offer, which brings us to the unconstitutional aspect of the demand for a polygraph and exceptional cooperation. Well, it's not unconstitutional. I mean, even in your theory, you'd say it would be constitutional if there were consideration. So asking for waivers in a plea agreement is what plea agreements are about. You're essentially saying it was an unfair request, not that it was an unconstitutional one. Perhaps the term unconstitutional. It's a waiver of constitutional rights that continue to exist beyond the plea. As this Court acknowledged in United States v. Watts, even after an admission of guilt, there remain a variety of rights, including the right to remain silent beyond the mere statement that I am guilty. And the government shouldn't punish a defendant for refusal to go beyond that. And our guidelines have accepted that premise and established a variety of additional benefits if beyond the agreement to simply say I am guilty, I accept responsibility, please analyze my conduct and sentence me accordingly. As the government pointed out in their brief in Washman, if you want some additional consideration, if you want safety valve, they can, in fact, say, well, then come into us, sit down, talk, tell us the truth, waive those additional constitutional rights that exist post-plea, and we will give you that consideration. We will give you the two points for safety valve. We will give you some accommodation because we acknowledge you are taking a step beyond what you are required to do. We're willing to give you something for it. Kagan. On one level, what he would have gotten would have been the point that you're asking for. He would have only gotten the point that every other defendant gets for standing up and saying I'm guilty, please sentence me, I did everything in the indictment, forfeit all the assets you've identified, sentence me, and let's move forward. Can I ask one other question? Certainly. And if you want to reserve some time, you should probably do it. This may be to the side of the argument you're making, but what actually happened here was that you did not, you pled not to the entire indictment, but to two counts. And the docket sheet, as I recall, does demonstrate that there was at least some preparation for trial that went forward. So why doesn't that preclude the application of the extra point? If you look at the docket sheet, those are my filings, Your Honor, not the government's. And I just was having a period of time when I didn't have much work and was perceiving that I should do everything I could in every case open. Presumably the government had to read them and made a motion for continuance or something like that. They're certainly available. And all they talked about was that our defense would be there's no reason to find him guilty because he's already pled guilty and been sentenced. If you look at the record, and this is discussed in the second volume of the E.R. at pages 34 and 35 as part of the plea colloquy, and in the second E.R. again at 310 as part of the sentencing, the reason for the structure of the plea was to allow the maximum amount of restitution to be taken out of Mr. Miller's earnings while in prison. BOP has a policy that special assessments are paid first. Therefore, prior to paying any restitution to CISCO, and CISCO clearly was entitled to a substantial restitution amount, they would have taken another $1,000 out of Mr. Miller's earnings while in prison, and he is participating in the Income Inmate Responsibility Program. As part of the plea, and as part of the plea agreement, explicitly stated is admission of all conduct in the indictment and an explanation of why our plea was done for the inmate, and I haven't ever heard or seen anything from the government saying that that was an inappropriate consideration to attempt to maximize return to CISCO through the BOP assessment policy with the inmates. Your time is about up. Thank you, Your Honor. May it please the Court. Kelly Zusman appearing on behalf of the United States. Your Honor, there were three issues raised with this appeal. I'd like to just briefly address the other two that weren't addressed by opening counsel, and that is the fraud loss calculation. I think United States v. Stupas provides a pretty good, helpful guide to this Court   on the way in which the district court here properly determined the fraud loss based upon the losses sustained by the victim of this offense, CISCO system. And beyond urging you to follow what the Court did in Stupas, I'm going to leave that alone unless there are any other questions. One thing I don't understand, and this may be just going back too many steps from where the case law has developed, that when the guidelines talk about fair market value, I assume what they're talking about is if someone takes something from me, the way it's going to cost me to replace it is to go buy it retail, so the fair market value is the appropriate loss calculation. But if you're buying, if you're stealing something from a manufacturer, I have a hard time understanding why even the wholesale fair market value is the relevant loss calculation as opposed to some cost notion. I mean, they're not losing the fair market value. They're only losing whatever it would cost them to produce it or maybe the cost plus profit or something like that. But it seems like a mismeasure. Well, and I guess it is, this is kind of a difficult scenario. It's an unusual fraud case. And the guidelines. I'm sort of going beyond that, though. Okay. I mean, forget it. I mean, I understand there's a problem because there are two markets. But even if there weren't two markets, I don't understand why it's a sensible measure. Well, the fraud loss guidelines are a proxy for the harm that's caused to the victim. And I think the harm here is explained by Cisco. And Mr. Barbieri testified about this, is that the parts that Cisco was sending to Mr. Miller when he called using those smart net contracts, those were parts that otherwise could have gone to other customers. And so they used the value of the goods that certainly would have been charged to other customers working through an authorized distributor. So, again, it may not be perfect. But I think in terms of estimating loss for purposes of assessing quantum of harm, it's probably the best that we have. And, again, it was the same valuation method accepted in Stupas. And I think it's a reasonable valuation method here. I think the defendant's theory that somehow we should use the gray market that Cisco wasn't operating in would result in a bit of an anomaly in that we would have a loss computation for the restitution figure. And there was no challenge whatsoever to the restitution figure. There was also a challenge here to the reasonableness of the sentencing and whether or not the district court imposed a substantively reasonable sentence and why the sentences imposed in Stupas and by this court in Gordon or affirmed by this court in Gordon, the district court, I think, properly looked at the fact that Mr. Miller, unlike Mr. Stupas or Mr. Gordon, was a Category 3 offender, that he had some significant prior convictions that justified that modest difference in the sentence. Finally, on the acceptance of responsibility, I think it's important to note that what was cited to this court is what 3E says, talks about 3E used to focus strictly upon obviating the need to prepare for trial. It now looks at conserving government resources and the resources of the court. And we know from both Johnson and Nadina Veltran that when the government says the defendant has refused to waive appeal, that's a use of government resources. And ---- Kagan. It really depends on whether you read it. I mean, still the statute as written or the guideline as written ultimately focuses on not having to go to trial. And the real issue, and it's the Johnson issue, is whether there is an implicit discretion to the government to withhold for reasons that don't have to do with going to trial, which isn't in the guideline directly. It doesn't really say in the discretion of the government or anything like that. So I understand this is re-arguing the Johnson issue, but I really don't see that the statute supports what you're saying, that the guideline supports what you're  saying. Well, and I guess what I'm looking at is 3E1.1 sub B and the final clause says permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. And I think it's that second clause of allocating our resources efficiently that includes waiver of appeal, waiver of issues involving sentencing enhancements where we had to call the Cisco employee in and use additional resources to fight about the sentencing loss when ultimately the court came down well within the range that the government had urged. I'd like to step back just a little bit on the acceptance and the district court's fact findings here. I think because there have been a number of allegations made about what did or did not happen during these plea negotiations. But what the district court here found was really very simple, and that is that the defendant failed to carry his burden of establishing that the government's reasons were either unconstitutional or were arbitrary. And that's really all Judge Mosman did. He said, I just don't see anything arbitrary or unconstitutional here. Let's assume that requiring him to take the polygraph test was inappropriate, I won't say unconstitutional. Would that change the decision in this case? No, I don't believe it would. And first off, the plea provision regarding the polygraph simply said that the government may ask the government to take a polygraph. And the reason that was there is because Mr. Miller, over the course of two years, managed to, after he acquired unlawfully these parts from Cisco, resold them through eBay, and he made over $750,000. Now, at the time of his arrest, we seized two vehicles. We were not able to obtain any value from either of those vehicles. So we basically have a $750,000 loss and no money. The government, and this is an MVRA case, so mandatory restitution, full restitution, and as part of our effort to gather what assets we might be able to, especially with someone who was just convicted of fraud, we have the polygraph provision in there as a safety check. So that's why it was there. I don't believe it was unconstitutional, and it's certainly not an arbitrary reason. And it's not – I think it would be difficult to view that in isolation when the government actually came forward with several reasons for not making that additional motion. All right, thank you. I have another question. As you know, there's en banc activity in Johnson. Should this Court wait until that activity is completed, or could we make a decision on the basis of Medina-Beltran? I believe the latter, Your Honor. I think this is – Tell me why. I thought this was controlled by Medina-Beltran and Espinoza-Quino even before Johnson came out. That's true, but if we were to take Johnson en banc, then we would reconsider the whole group of cases. And, again, even if Johnson goes en banc, the key, I think, goes back to Espinoza-Quino, which is it adopts the standard from the Supreme Court's decision in Wade and says St. holds true under 5K1.1 on the government's refusal here on the Supreme Court. That's your argument. That's not the answer. I mean, obviously there was a dispute in Johnson about whether that was right or wrong, and that's what the en banc issue would be, whether that's true or whether the government's discretion is more limited than any non-arbitrary reason. And I think here, because we have so many reasons and because we have the district court's finding that the government's reason here was not arbitrary. But it's true that some of the reasons were not accurate. Do you agree with that? I'm sorry? It seems to be true that some of the reasons were inaccurate. I don't believe so. There was apparently a misunderstanding about the applicable standard of proof, whether it was beyond a reasonable doubt. That was one of the reasons you gave, so that was inaccurate. And there was at least one other that just seemed just not accurate. Well, and I don't agree with characterizing it as inaccurate. The defendant filed a sentencing memo in which he cited to the district court. I read what it said. It was perfectly clear. Okay. Regardless, though, those – certainly the burden of proof was not the keystone to what broke down in the plea negotiations here. Judge Mossman was certainly well aware of the applicable standard of review of the various sentencing issues that were before him. Really key to the government's decision here was the no waiver of appeal, the disputed sentencing factors, the refusal to cooperate in the recovery of any additional assets that the defendant might have that could be used to satisfy restitution. Those were – For example, it's hard to understand how the disputed sentencing considerations would be a reason, because even the proposed plea agreement didn't bind anybody as to sentencing. Well, what the plea agreement offered, one of the offers, was to agree to the range of $2.5 million to $7 million. And ultimately the court fell within – If that wouldn't be binding, it wouldn't be binding on the district court. Not under the terms of the plea offer, I mean, unless it was an 11C1C plea, which we never even got that far. I just – I think if you want to defer until Johnson, I don't see anything wrong with that. I don't think you need to do that here, given the multitude of reasons, given the district court's fact-finding that there was nothing – certainly there's been no allegation of any unconstitutional motive. The government didn't fail to seek the one level off because of Mr. Miller's race or his religion or any prohibited factor along that line. I think you have enough of a record here to affirm the district court's decision that the government's reasons were not arbitrary. Is your opponent correct that in fact the government didn't do anything to prepare for trial? Yes and no. I think the government was placed in a somewhat awkward position relative to the fact that the defendant was only pleading to two counts. We were, in fact, preparing to go to trial on the additional ten counts pending the outcome of the sentencing proceeding. Now, during the sentencing proceeding, Judge Mossman rather diplomatically made it clear to us that if we were to proceed to trial on those additional ten counts, his sentence wasn't going to be any different. We got the message. It was the intent to begin with. I mean, that's why they structured it the way they did. They didn't intend it to be any different. My understanding is that the reason they pled the way they did was on the understanding that the sentence wouldn't be any different. That was the anticipation, yes. So you didn't actually do anything. And there was no – and a fair reading of what was happening was that you didn't really need to do anything. Again, I think everything was held in abeyance pending that sentencing. So were we prepared to go to trial on the additional ten counts, depending upon the outcome of that sentencing? You were able to, but you didn't do anything. Well, and you're correct. We didn't file any witness lists. We didn't file any exhibit lists. That type of trial preparation did not take place. That's accurate. The point is, though, until the matter was resolved, somebody had to be at the ready to go to trial. That's exactly right. And that was the government's position. I gather that's the government's position. That's precisely right. Cisco had to be ready. They were lined up with their loss figures and their charts and all of the rest of it. And it couldn't be over until it was over. That's correct. And it wasn't until after the sentencing that the government, again, understanding Judge Mossman's views on the appropriate sentence, then determined that it was appropriate to dismiss the remaining counts. Okay. Your time is up. Thank you very much. Thank you, Your Honor. We'll give you one minute in the back. Thank you, Your Honor. I'd just like to address three brief issues. First, it was made explicitly clear at sentencing that Cisco did not lose any businesses. There was no loss to them. There was no loss to the Cisco market. There was no loss to the Cisco market. And that's on the reply brief at page 1, also in the second volume of the excerpts of record at 68. This is not a situation where they lost sales or lost money. In terms of the Cisco market, there is one market they lost. That doesn't make any sense because they had parts, which if they didn't give it to Mr. Miller, they could have sold. So how can that be? One of the reasons why there is such a large secondary market in Cisco parts and unauthorized dealers is there are a lot of Cisco parts that do not get sold to authorized dealers and end up on that secondary market. Cisco over many factors. So it's all right to steal them? No, it's not all right, and he's punished. And he absolutely should be punished, and he has been. But Cisco doesn't just throw them in the garbage at that point. Which is why the restitution figure is appropriate based upon Cisco's loss. The question is the guideline loss and what's the fair market value of these products. And that is not Cisco's monopolistic pricing. It's just Cisco didn't lose anything. I'm saying that can't be right. It can't be right to do that. Well, in terms of how the Mandatory Victims Restitution Act, they did not lose any sales, but the Mandatory Victim Restitution Act requires the restitution in the amount that they could have sold the parts for, regardless of whether there was any specific loss of sales to them, lost opportunity costs. In terms of the polygraph issue, I would note that those issues, the proffering, are all under 5K1.1. If you read Guideline 5K1.2, it specifically says that no defendant is to be punished for failure or refusal to proffer or cooperate, and that is what is happening to Mr. Miller. In terms of conserving resources, it is true that the revisions under the Protect Victims Restitution Act are to guidelines, are designed to conserve the government's resources. There has to be a line. It also takes government's resources to give us discovery. It also takes government's resources to respond to valid motions. We cannot have the third point for acceptance of responsibility come down to whether when defense counsel is handed the indictment, they say how quickly and to what can I plead. What would this bottom line of opinion of this Court be, in your view, that if you plead guilty, you have accepted responsibility? If you plead guilty and do not require the government to prepare for trial, yes, you have accepted responsibility under 3E. That's the specific language of the guideline. That is what it's directed at. Did the government have to expend resources to prepare for trial? But then what is the function of having the government make a motion? But the government's motion is supposed to be made in good faith, not arbitrarily. The language really, as noted in the Johnson, and now we're getting into the amicus filing that our office made in Johnson, really the language from the Protect Act, which is interesting because it predates Booker, has not changed dramatically, has not really changed from this Court's prior rulings in the other cases where it said ultimately it was the Court's decision, which is why we believe that there was such a vigorous dissent in Johnson and why the Court is considering taking it en banc. Thank you very much. Thank you, Your Honor.
judges: Farris, Nelson D. W., Berzon